No. 22-50669

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

DEFENSE DISTRIBUTED; SECOND AMENDMENT
FOUNDATION, INCORPORATED,
*Plaintiffs-Appellants*,

v.

MATT PLATKIN, ATTORNEY GENERAL OF
NEW JERSEY, IN HIS OFFICIAL CAPACITY,
*Defendant-Appellee.*

On Appeal from the United States District Court for the
Western District of Texas, Austin Division; No. 1:18-cv-637

## OPPOSITION TO MOTION FOR INJUNCTION PENDING APPEAL AND
## CROSS-MOTION TO DISMISS FOR LACK OF JURISDICTION

MATTHEW J. PLATKIN
    *Acting Attorney General of New Jersey*
JEREMY M. FEIGENBAUM
    *Solicitor General*
ANGELA CAI
    *Deputy Solicitor General*
TIM SHEEHAN
    *Deputy Attorney General*
Office of the New Jersey Attorney General
25 Market Street, P.O. Box 080
Trenton, New Jersey 08625
angela.cai@njoag.gov

*Attorneys for New Jersey Attorney General*

# INTRODUCTION

The New Jersey Attorney General (NJAG) respectfully submits this response to Appellants' motion for an injunction pending appeal and cross-moves to dismiss the appeal for lack of jurisdiction.[1] Appellants' motion and the instant appeal fail for the same reason: there is no case in the underlying district court proceeding to which the NJAG is a party. Appellants' contrary theories ignore both the plain language of this Court's mandate and the events of the past five months. This Court's prior order did not create a second, parallel case against the NJAG in the Western District of Texas, and nothing Appellants have done in their separate lawsuit against the United States has established the NJAG as a party there, either. This Court should therefore dismiss the appeal and deny Appellants' motion for an injunction.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In July 2018, Appellants filed suit in the Western District of Texas challenging a cease-and-desist letter from the NJAG warning that dissemination of printable gun files for use by New Jersey residents would violate New Jersey public nuisance law. While the Texas district court dismissed that lawsuit for lack of personal jurisdiction,

---

[1] Although special appearances are no longer necessary under the Federal Rules, *see Hous. Auth. of City of Atlanta, Ga. v. Millwood*, 472 F.2d 269, 272 (5th Cir. 1973), the NJAG is appearing specially and exclusively to contest his status as a party to these proceedings. The NJAG does not otherwise concede that his presence in this case is proper or "invoke[] the judgment of the court on any question other than jurisdiction." *Maiz v. Virani*, 311 F.3d 334, 340 (5th Cir. 2002).

this Court held that Appellants had sufficiently alleged jurisdiction as to the NJAG and reversed. *See Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020).

After the district court granted the NJAG's motion to sever the lawsuit against him from Appellants' lawsuit against several federal defendants and transfer it to the District of New Jersey, the litigation returned to this Court. *See Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022). On mandamus, this Court determined that "the NJAG did not carry its burden to clearly demonstrate that transfer is clearly more appropriate than the Plaintiffs' choice of forum" and that the "district court erred legally and factually in virtually every aspect of this issue." *Id.* at 436. But this Court simultaneously recognized the limits on its jurisdiction. As this Court found, notwithstanding the merits of the underlying severance-and-transfer order, "[t]he twist in this case is the transfer to a district court outside the Fifth Circuit, a court over which this court exercises no control. This court lacks power to order a return of the case to our circuit." *Id.* at 423. Given its geographical limits, Fifth Circuit precedent provided only one "path to a cognizable mandamus remedy": to "request that the transferee district court return the case." *Id.* at 424 (quoting *In re Red Barn Motors, Inc.*, 794 F.3d 481, 484 (5th Cir. 2015)).

As a result, this Court carefully crafted a remedy that was consistent with the jurisdictional limits it identified. This Court ordered that "[a] writ of mandamus shall issue herein directing the district court to: (1) Vacate its order dated April 19, 2021

that severed Defense Distribute's claims against the NJAG and transferred them to the United States District Court for the District of New Jersey; (2) Request the District of New Jersey to return the transferred case to the Western District of Texas, Austin Division; and, (3) After return, to reconsolidate Defense Distributed's case against the NJAG back into the case still pending against the State Department." *Id.* at 436-37. Consistent with that approach, the Court explained that "[u]pon return of this case to the Western District of Texas, the [district] court should entertain a motion for preliminary injunction expeditiously." *Id.* at 421 n.2.

Appellants and the NJAG proceeded with the case in the District of New Jersey. *See Defense Distributed v. Platkin*, Nos. 19-4753; 21-9867 (D.N.J.). At that court's request, the parties submitted briefs laying out their respective positions on transfer, continuing to dispute whether the case belonged in Texas or New Jersey. *See* No. 19-4753, ECF Nos. 54, 56, 57. Appellants asked the District of New Jersey to "grant the transfer request and return the entire controversy to the Western District of Texas immediately," emphasizing this Court already "held that the case against the New Jersey AG should be transferred back to Texas and reconsolidated with the related case against the State Department, with preliminary injunction hearings against the New Jersey AG to proceed in Texas expeditiously." ECF 54 at 1. But the New Jersey district court disagreed in a 36-page opinion. *See* ECF 58. Although that court acknowledged "the Texas District Court issued a non-binding request for

retransfer," that court concluded that because it "decline[d]" the request, "the litigation [would] proceed" in New Jersey instead. *Id.* at 35. Appellants filed a motion for reconsideration, which is pending before that court. *See* ECF 61.

While the request to the District of New Jersey to retransfer the case to Texas was pending, Appellants simultaneously made several filings in the Western District of Texas. When the Texas district court originally severed Appellants' lawsuit against the NJAG from their suit against federal defendants, it transferred the former while the latter proceeded under Docket No. 18-637—the docket that had previously included the NJAG. As a result, that docket lists the federal officials as defendants but recognizes the NJAG as "TERMINATED" as of April 19, 2021. ROA.3. But on June 6, 2022, Appellants filed a "Notice of Vacatur" in that docket, arguing their claims against the NJAG had been "automatically revived" by the Fifth Circuit's mandamus decision, ROA.4398, and moved for a preliminary injunction against the NJAG that same day, ROA.4403. Because the NJAG was not a party to the underlying proceedings, it did not respond. The district court, relying on this Court's mandamus decision, found that "it lacks jurisdiction to consider [Appellants'] claims," and that without "power to adjudicate these motions, the Court must dismiss them." ROA.4436-37.

4

## ARGUMENT

This Court's prior opinion makes clear that there is no case in the Western District of Texas to which the NJAG is a party unless and until Appellants' case against him is returned from the District of New Jersey. Appellants' theories—that this Court's opinion created a second parallel case against the NJAG in the Western District of Texas, or that Appellants' subsequent filings did so—are incorrect.

As an initial matter, this Court's prior opinion lays out Appellants' only path for having their claims against the NJAG heard by the Western District of Texas. This Court explained that the April 2021 severance-and-transfer placed the litigation against the NJAG exclusively within the District of New Jersey, so that the only way for that case to be heard in the Western District of Texas would be if "the transferee district court return[s] the case." *Bruck*, 30 F.4th at 424. That was no stray language. Appellants had urged this Court to issue a binding order compelling return of the case to Texas, so that it could be rejoined with the separate litigation in Texas against the federal defendants, and urged an injunction be issued in that forum. But this Court reasoned that it "lack[ed] power to order a return of the case to our circuit." *Id.* at 423. That was why this Court explicitly ordered the Western District of Texas only to "*[r]equest* the District of New Jersey to return the transferred case," *id.* at 437 (emphasis added), and then instructed the Western District of Texas to

5

expeditiously consider Appellants' request for a preliminary injunction "[u]pon return of this case" from that court, *id.* at 421 n.2.

Because the District of New Jersey subsequently declined to return the action, Appellants' recourse is not in the Western District of Texas or this Court. As noted above, Appellants argued to the District of New Jersey that the suit against the NJAG belongs in Texas based on law-of-the-case, comity considerations, and Section 1404, but the District of New Jersey disagreed. *See supra* at 3-4. As a result, Appellants' suit against the NJAG is still in "a district court outside the Fifth Circuit, a court over which [the Fifth Circuit] exercises no control." *Bruck*, 30 F.4th at 423. And the Western District of Texas cannot "reconsolidate Defense Distributed's case against the NJAG back into the case still pending against the State Department" or consider any preliminary relief, because both could only occur "[a]fter return" of the litigation. *Id.* at 436-37, 421 n.2. That is why the Western District of Texas's docket still treats the NJAG's party status as "TERMINATED." ROA.3.

Appellants appear to recognize that the District of New Jersey's decision to keep the case in New Jersey means there is no case to litigate in Texas. After all, they fought hard to attempt to secure retransfer and even sought reconsideration from that court, and that motion remains pending. *See* No. 19-4753, ECF 61. And if that fails, Appellants will no doubt seek mandamus or other forms of appellate review from the Third Circuit, the circuit with jurisdiction over their case against the NJAG,

either immediately or after final judgment. Indeed, Appellants also have the option of seeking preliminary injunctive relief in the District of New Jersey—which the NJAG will oppose on the merits and equities, but not on jurisdiction or venue. But what Appellants cannot do is request relief against the NJAG in the underlying Western District of Texas proceeding or in this Court after the District of New Jersey declined to return their lawsuit against the NJAG.

Neither of Appellants' arguments for why the NJAG is a proper party in their Western District of Texas case against the federal defendants is consistent with this Court's opinion or hornbook law. Appellants first argue that this Court's vacatur of the severance-and-transfer order "automatically revived" their prior claims against the NJAG in the Texas docket, Appellants' Motion for Injunction Pending Appeal ("Mot.") at 7—meaning that their lawsuit against the NJAG has now morphed into two identical lawsuits, one in New Jersey and one in Texas. But that claim misreads this Court's opinion. This Court was explicit that there was only one action against the NJAG, in New Jersey, and the Texas district court could not adjudicate that suit until the New Jersey court returned it. *See Bruck*, 30 F.4th at 424 ("Because of the transfer, the Texas transferor court can no longer enter an appealable order in the case."); *id.* at 437 (ordering Texas court to "request" that transferee court "return the transferred case"). If the vacatur "place[d] the parties in the position they occupied before the order" such that the transfer "never happened," Brief of Appellants ("Br.")

28-29, then there would have been no need to "return" the case so that it could be "reconsolidate[d] … into the case still pending against the" federal defendants, and no need to wait for that return to grant any preliminary relief. *Bruck*, 30 F.4th at 437. And there would have been no need for Appellants to seek transfer or reconsideration in New Jersey. Appellants' theory cannot be squared with this Court's ruling.[2]

Appellants' second theory—that "refiling" the Second Amended Complaint (SAC) restored the NJAG as a party below—is also incorrect. Mot. 7. For one, as a result of the severance, the SAC no longer contains any claims against the NJAG, so refiling would have no effect. Severance of claims creates two distinct lawsuits with independent jurisdictional properties. *See United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983) ("Severance under Rule 21 creates to separate actions or suits … Where a single claim is severed out of a suit, it proceeds as a discrete, independent action."). That is why this Court correctly held that the severed claims would need to be "reconsolidate[d] … into the case still pending against the State Department,"

---

[2] Appellants' theory suffers from several additional shortcomings. First, their premise is that vacatur must "place the parties in the position they occupied before the order." Br. 28-29. Before the order, Appellants had a single action against the NJAG in the Western District of Texas. But on Appellants' view, that single action has become two separate suits—one in the District of New Jersey, and a mirror image suit reborn in the Western District of Texas. That Appellants' theory would not return the parties to the status quo *ante*, their asserted goal, belies their claim. Second, Appellants offer no explanation or authority for how a Court that lacks power to order a suit returned to Texas can nevertheless order a suit reinstated in Texas as though the transfer never happened.

which could happen only if the District of New Jersey first "return[ed] the transferred case" to Texas. *Bruck*, 30 F.4th at 437. If Appellants could simply re-add the NJAG to the proceedings by re-filing their complaint, it is not clear why a mandamus order to undo the transfer would have been necessary or appropriate.

In any event, Appellants never actually refiled the SAC. Instead, they sought a preliminary injunction against the NJAG in a docket that, post-severance, contains claims exclusively against federal defendants, and in that motion buried a request for leave to refile the SAC in a footnote. ROA.4406. But even if leave were granted, the NJAG still would not be a party unless Appellants both filed a pleading asserting claims against the NJAG and served the NJAG with that new pleading—a necessary step given that the NJAG is not part of that severed lawsuit against federal defendants. *See Maiz*, 311 F.3d at 340 ("It is a fundamental rule of civil procedure that '[b]efore a federal court may exercise jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.'" (quoting *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)); *Millwood*, 472 F.2d at 271 (stating that even if a "motion to add a party is granted," service of process still "must be made in the usual way" (internal citations omitted)). Asking in a footnote in a lawsuit against federal officials for leave to file a pleading that also

names the NJAG as a defendant does not make the NJAG a party, is not service of process, and is not a basis to enter an injunction against a New Jersey official.[3]

Finally, because the NJAG is not a party in Appellants' lawsuit against federal defendants in the Western District of Texas, the NJAG could not have waived and/or forfeited the defects requiring dismissal of this appeal. *See* Br. 37. This Court rejected a similar argument in *Bennett v. Pippin*, 74 F.3d 578 (5th Cir. 1996), where a county defendant was dismissed without prejudice early in a Section 1983 action and later reinstated on the day of trial. *Id.* at 582, 587. In the interim—while the County was not a party—the judge entered an arbitration order, "agreed to by the parties," which stated that the parties had waived their right to a jury trial. *Id.* at 582. This Court rejected an argument that the County had likewise waived its right to a jury trial, reasoning that the County "was not a party" to the arbitration and was not a party when arbitration was ordered, and thus "was not a party to any waiver attending those proceedings." *Id.* at 588. So too here: because the NJAG was not a party to the underlying proceeding against the federal officials after severance—as

---

[3] Appellants also suggest it does not matter if the NJAG is a party because this Court could issue relief under the All Writs Act against him even if he is not. Mot. 7-8. But as this Court has repeatedly held, that Act "empowers courts to issue writs of mandamus *if* the courts also have appellate jurisdiction," not against parties over which the court has no jurisdiction. *Bruck*, 30 F.4th at 423; *Red Barn*, 794 F.3d at 483-84; *see also Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999) (confirming that All Writs Act authorizes appellate court only to issue writs "'in aid of' its existing statutory jurisdiction; the Act does not enlarge that jurisdiction.").

is correctly reflected on the district court docket itself—his nonappearance may not be construed as either waiver or forfeiture. *Cf. Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 n.1 (5th Cir. 2003) ("For purposes of appellate jurisdiction, we treat an improperly served defendant as never before the district court.").

This Court should dismiss the instant appeal for lack of jurisdiction, and deny Appellants' motion for injunction pending appeal or dismiss it as moot. Appellants will oppose this motion.

August 29, 2022                           Respectfully submitted,

                                          MATTHEW J. PLATKIN
                                          Acting Attorney General of New Jersey

                              By:    /s/ Angela Cai
                                     Angela Cai
                                     Richard J. Hughes Justice Complex
                                     25 Market Street
                                     Trenton, New Jersey 08625
                                     (609) 414-5954
                                     angela.cai@njoag.gov

## **CERTIFICATE OF COMPLIANCE**

This document complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,789 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman type.

Dated:      August 29, 2022                          /s/ Angela Cai
                                                                    Angela Cai

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2022, I filed the foregoing Opposition to Motion for Injunction Pending Appeal and Cross-Motion to Dismiss for Lack of Jurisdiction with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Counsel of record for all parties are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated:     August 29, 2022                    /s/ Angela Cai
                                              Angela Cai