No. 22-50669

In the United States Court of Appeals
For the Fifth Circuit

Defense Distributed; Second Amendment Foundation, Incorporated,

Plaintiffs - Appellants

v.

Matt Platkin, Attorney General of New Jersey, in his official capacity,

Defendant - Appellee

Appeal from the United States District Court for the
Western District of Texas, Austin Division; No. 1:18-CV-637

**Appellants' Reply in Support of
Appellants' Motion for an Injunction Pending Appeal**

Clark Hill PLC
Matthew A. Goldstein
1001 Pennsylvania Avenue Northwest
Suite 1300 South
Washington, DC 20004
(202) 550-0040

Josh Blackman LLC
Josh Blackman
1301 San Jacinto Street
Houston, Texas 77002
(202) 294-9003

Beck Redden LLP
Chad Flores
Owen J. McGovern
1221 McKinney Street
Suite 4500
Houston, Texas 77010
(713) 951-3700

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

ARGUMENT ................................................................................................................... 1

    I.    The district court had jurisdiction to entertain the injunction request. ............................................................................................................... 2

        A.    Plaintiffs' actions on remand accord with *Bruck*. ....................... 2

        B.    The revival procedure made the AG a party below. .................... 6

        C.    The refiling procedure made the AG a party below. .................. 9

CERTIFICATE OF SERVICE ................................................................................... 13

CERTIFICATE OF COMPLIANCE ........................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Defense Distributed v. Bruck*,
　　30 F.4th 414 (5th Cir. 2022).................................................................*passim*

**Other Authorities**

47 Am. Jur. 2d Judgments § 676 (2009) ................................................................7

## ARGUMENT

The motion for an injunction pending appeal should be granted because the AG's sole argument—his denial of any party status whatsoever—is clearly wrong.

By silence the AG has conceded away most of the usual injunction inquiries. With both the motion and an appellants' brief filed early, Defense Distributed and SAF established all an injunction pending appeal's elements, including likelihood of success, irreparable harm, party equities, and public interest. *See* Mot. at 4-13; Br. of Appellants at 25-56. To oppose, the AG says *nothing* about the irreparable harm his censorship causes every passing day. He says *nothing* about the equities severely weighing against his incessant gamesmanship. And he says *nothing* about the public interest in halting his prior restraint's litany of First Amendment violations. In all of those key respects, the AG essentially concedes that the motion is meritorious.

The only disputed issue is likelihood of success as to Issue I: "whether the district court had jurisdiction to adjudicate Plaintiffs' preliminary injunction request." Br. of Appellants at 3. The AG says that the district court lacked jurisdiction, and that therefore no injunction pending appeal should issue, because "there is no case in the underlying district court proceeding to which the NJAG is a party." Resp. at 1. But because the requisite party status *did* exist below—Plaintiffs properly sought to reinstitute their claims by way of either revival or refiling—the district court *did* have jurisdiction and Appellants are likely to succeed on appeal.

1

I.       **The district court had jurisdiction to entertain the injunction request.**

The district court dismissed Defense Distributed and SAF's motion for a preliminary injunction against the AG on jurisdictional grounds, holding that it "lacks jurisdiction to consider claims against the New Jersey Attorney General in this matter" and has "no power to adjudicate" the relevant motions.  ROA.4436-37.  But the Brief of Appellants shows in full detail that, "[w]hile it is true that *one* procedural solution has yet to occur (retransfer of what lies before the District of New Jersey), Defense Distributed and SAF had nonetheless presented their claims against the AG by invoking two alternative solutions: (1) revival of the Second Amended Complaint and (2) refiling of it."  Br. of Appellants at 26.  The AG tries to defend the district court by arguing that "there is no case in the underlying district court proceeding to which the NJAG is a party."  Resp. at 1.  But his effort is unconvincing and incomplete.  On one ground or another, the appeal will succeed.

A.       **Plaintiffs' actions on remand accord with *Bruck*.**

The AG's main point says that the Plaintiffs' use of revival and refiling procedures cannot possibly have succeeded because this Court's decision in *Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022), did not expressly foresee and endorse those options.  Aside from this arguments' most obvious flaw—*Bruck* could not possibly have invalidated future hypothetical procedural steps that had yet to occur (advisory opinions are just dicta)—the AG severely misreads *Bruck*.

*Bruck* does not foreclose the revival and refiling options invoked below. To the contrary, everything Appellants did on remand from *Bruck* accords with both the decision's letter and its spirit. If anyone is guilty of violating *Bruck*, it is the AG, whose latest obstructive actions created even more needless procedural runaround.

This controversy's procedural impasse entails not just one problem, but *two*. The Western District of Texas' sever-and-transfer order split the atom, so to speak. It took what should have been one unified action with all claims—both the claims against the State Department and the claims against the AG—and split it in two.

That error created *two* distinct procedural glitches in need of *two* distinct solutions. Problem #1 is that the claims against the AG *are not* where they belong—in the Texas with the case against the State Department. Problem #2 is that Plaintiffs' claims against the AG *are* where they do *not* belong—alone in New Jersey. Both halves of the controversy are infected. Both need their own cure.

The AG fails to see Problem #1 at all, fatally skewing everything he says about *Bruck*. He wrongly thinks that the instant appeal is all about Problem #2's issue of moving what is in New Jersey back to Texas. He fails to see that what this appeal is really about is Problem #1's separate and distinct issue of making claims that belong in Texas exist in Texas. The AG's flawed premise dooms all of his conclusions.

Unlike the AG, *Bruck*'s mandate realized the sever-and-transfer error's two distinct problems. It rightly solved those two problems with two distinct solutions.

3

To solve Problem #1—the erroneous absence of claims against the AG in Texas—*Bruck* made the district court vacate its sever-and-transfer order. This was the simpler problem to solve, given that vacatur automatically accomplishes all that is needed by *fiat*. Hence *Bruck*'s use of vacatur to solve Problem #1 without fanfare.

To solve Problem #2—the errant presence of claims against the AG in New Jersey—*Bruck* mandated the retransfer request. This was arguably the more difficult problem to solve, given the supposed need for cooperation by the District of New Jersey. Hence *Bruck*'s detailed discussion of the retransfer solution for Problem #2.

Plaintiffs' actions on remand accord perfectly with *Bruck*'s dual problems and dual solutions. To carry out *Bruck*'s solution to Problem #1, Plaintiffs are following through on the mandated vacatur by reinstituting their claims against the AG in the existing case against the State Department. And to carry out *Bruck*'s solution to Problem #2, Plaintiffs are following through with the mandated retransfer request by seeking retransfer in the District of New Jersey.

In this way, Plaintiffs' view of *Bruck* gives full effect to *both* the vacatur *and* the retransfer request. It links each solution to a corresponding problem and gives meaning to all parts of the mandate. In contrast, the AG's half-baked view of *Bruck* renders the vacatur meaningless—an invalid result for any textual construction—and leaves a critical half of the problem unsolved.

Indeed, the AG's view of *Bruck* leaves the *most important* problem unsolved. Problem #2 (the errant presence of claims in New Jersey) will need to be solved eventually, since having extra claims in New Jersey might cause friction if not managed properly. But Problem #1—an absence of claims against the AG in Texas—is urgent because the preliminary injunction proceedings that this Court held should occur in Texas are the key to stopping the AG's ongoing irreparable harm.

Of course it would have been ideal for these problems to have been solved simultaneously in one fell swoop, as would have been the case if the District of New Jersey had immediately granted the retransfer request. But the delayed solution to Problem #2 is all the more reason for *Bruck* to have solved Problem #1 separately, with an independent vacatur process that took effect automatically and regardless of how much foot dragging happened in New Jersey.

The AG's qualms about how Problem #2 will or might be solved are inapposite because this appeal is about Problem #1—the erroneous absence of claims against the AG in Texas. *Bruck* correctly started Problem #1's repair by mandating vacatur of the sever-and-transfer order, and Plaintiffs on remand correctly carried out Problem #1's repair by invoking the revival and reviling procedures.

## B. The revival procedure made the AG a party below.

"Revival is the first of two procedural devices establishing that, when Defense Distributed and SAF moved for the preliminary injunction, the district court had jurisdiction over the Second Amended Complaint's claims against the AG." Br. of Appellants at 27-32. The AG denies this with four arguments. All are wrong.

First, the AG says that the revival argument "misreads this Court's opinion" because *Bruck* "was explicit that there was only one action against the NJAG, in New Jersey." Resp. at 7. But timing is everything. The AG's favorite *Bruck* quotes were true *at the time—before* the district court carried out *Bruck*'s vacatur mandate. *Before* vacatur there was, indeed, only "one action against the NJAG." But *after* the vacatur-driven revival that *Bruck* itself caused, there are now *two* actions by the Plaintiffs against the AG—one in Texas, and one in New Jersey.

Second, the AG says that the revival argument "misreads this Court's opinion" because "the Texas district court could not adjudicate that suit [in New Jersey] until the New Jersey court returned it." Resp. at 7. But that point misunderstands which problem revival operates on. Revival does not address Problem #2 by trying to *bring back* to Texas the claims that are in New Jersey. Revival solves Problem #1 by recreating claims against the AG in Texas. Plaintiffs' preliminary injunction motion did *not* ask the Western District of Texas to act on

what was in New Jersey. It asked the Western District of Texas to adjudicate claims that, due to revival, existed anew in the Western District of Texas.

Third, the AG says that the revival argument wrongly makes there be "no need to 'return'" the case in New Jersey to Texas. Resp. at 8. But this is just another instance of the AG failing to realize that *two separate* problems exist. If the Court solves Problem #1 by upholding Plaintiffs' revival of their claims against the AG in Texas, the Problem #2 issue of parallel claims existing in New Jersey will still have to be dealt with one way or another. But as explained above, the harms posed by having *extra* claims in the wrong court pale in comparison to the harms posed by having *no* claims in the correct court. Revival directly solves the latter problem and indirectly makes the former problem both easier to solve and less urgent.

Fourth, the AG fails to read pages 28 through 31 of the Appellants' brief. The AG says that nothing explains how a district court might "order a suit reinstated in Texas as though the transfer never happened." Resp. at 8. But on pages 28 through 31, Plaintiffs present more than a dozen authorities, from black-letter treatises to recent Fifth Circuit precedent, explaining how vacatur does exactly that. A vacated order "lacks force or effect and places the parties in the position they occupied before entry of the judgment, with the underlying case and the original pleadings intact." Br. of Appellants at 28 (quoting 47 Am. Jur. 2d Judgments § 676 (2009)). No

inter-jurisdictional conflicts exist because everything about the Western District of Texas' vacatur of its own order happened locally, in the Western District of Texas.

Those scant objections are all that the AG has to say about the mechanics of revival by vacatur. Resp. at 7-8 & n.2. Despite the Brief of Appellants having shown their rule to be well-established law, the AG asks the Court to reject it without supplying a single contrary authority. He located no cases, no treatises, and no other authorities denying that vacaturs work precisely as Plaintiffs have explained.

What the AG really wishes to argue, he clearly cannot. The AG wishes that he could re-argue *Bruck* and convince the Court to *not* order vacatur in the first place. He wishes that the Court in *Bruck* had decided to order *only* the retransfer request. Yet as the first brief already explained, the AG cannot now challenge whether *Bruck* was right to mandate what it did. "*Bruck* was quite correct, but its correctness is beside the point." Br. of Appellants at 31. The AG's petition for rehearing *en banc* of *Bruck* failed long ago, and more recently the AG opted not to seek *certiorari* (the deadline passed in August). Thus, *Bruck*'s "decision to mandate vacatur is final; no collateral attack is allowed." *Id.*

### C. The refiling procedure made the AG a party below.

"Refiling is the second procedural device establishing that, when Defense Distributed and SAF moved for the preliminary injunction, the district court had jurisdiction over their claims against the AG." Br. of Appellants at 33-36. The AG tries to deny this with four arguments. All are wrong.

First, the AG says that, "as a result of the severance, the SAC [Second Amended Complaint] no longer contains any claims against the NJAG, so refiling would have no effect." Resp. at 8. But this falsely touts severance as though it entails real physical action. The AG argues as though severance caused the Clerk of Western District of Texas to mark red ink through certain parts of the complaint, or maybe take scissors to it and ship snippets to New Jersey. But of course none of that happened. The Second Amended Complaint has always stated Plaintiffs' claims against both the State Department *and* the AG. ROA.1854-1969. Nothing the district court or this Court did altered what the document "contains."

What courts do by technical *fiat* alone, courts can take away by *fiat* as well. Just as the district court accomplished the severance not in any actual physical sense, but merely by *deeming* the Second Amended Complaint to have a certain new status, so too the district court completely undid its order by the mere act of vacating it. Plaintiffs then resolved any doubt about technical loose ends by seeking leave to "refile" the Second Amended Complaint that had been there on the docket all along.

Second, the AG says that Plaintiffs "never actually refiled the SAC [Second Amended Complaint]." Resp. at 9. But that is only because Rule 15 required the Plaintiffs to seek leave first. What matters is that the AG was a party to every motion the Plaintiffs filed in August of 2022, including the two motions that presented the request for leave to amend. The request was made not just in one document's footnote, but in a second document clearly above the line as well. ROA.4406 n.1; ROA.4430 (highlighting the "alternative request for leave to amend").

Third, the AG denies the refiling option's efficacy by saying that no "service" occurred. Resp. at 9. But the AG was served vie ECF with everything the Plaintiffs filed below, including the notice of vacatur that invoked the revival argument, ROA.4402, the motion for a preliminary injunction that invoked both the revival and refiling arguments, ROA.4426, and the motion to grant the preliminary injunction request as unopposed that invoked both revival and refiling arguments as well, ROA.4433. Of course the AG was also served with the Second Amendment Complaint when filed in 2020. ROA.1854. Service via ECF throughout the life of a case is standard for parties that, like the AG, decide at a case's beginning to "waive any objections to the absence of a summons or service." ROA.134.

Finally the AG says that no waiver could have occurred while he was not a party. Resp. at 10-11. But that just begs the question. If the AG *was* a party that the district court had jurisdiction over, his refusal to show up below constitutes a complete waiver, forfeiture, and/or default of all non-jurisdictional opposition.

Last but not least, the AG has no response whatsoever to this key point: "Jurisdiction would have undoubtedly existed if, instead of acting to amend the 2018 action's existing complaint, Defense Distributed and SAF had instead initiated a brand new standalone action against the AG. But refiling a separate standalone action would flout this Court's holding in Bruck that Appellants' claims against the AG belong with Appellants' claims against the State Department. Hence the use of a Rule 15 amendment to both establish jurisdiction and respect the severance ruling." Br. of Appellants at 34-35 & n.2.

## CONCLUSION

The motion should be granted.

September 6, 2022                                   Respectfully submitted,

| | |
|---|---|
| Clark Hill PLC | Beck Redden LLP |
| Matthew A. Goldstein | /s/ Chad Flores |
| 1001 Pennsylvania Avenue Northwest | Chad Flores |
| Suite 1300 South | Owen J. McGovern |
| Washington, DC 20004 | 1221 McKinney Street |
| (202) 550-0040 | Suite 4500 |
| | Houston, Texas 77010 |
| Josh Blackman LLC | (713) 951-3700 |
| Josh Blackman | |
| 1301 San Jacinto Street | |
| Houston, Texas 77002 | |
| (202) 294-9003 | |

Attorneys for Appellants
Defense Distributed and
Second Amendment Foundation, Inc.

## CERTIFICATE OF SERVICE

On September 6, 2022, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and service will be accomplished by the appellate CM/ECF system to all registered users for this case.

　　　　　　　　　　　　　　　　　　/s/ *Chad Flores*
　　　　　　　　　　　　　　　　　　Chad Flores

## CERTIFICATE OF COMPLIANCE

This filing complies with the type-volume limitation of Federal Rule of Appellate Procedure 27 because it contains 2,594 not-exempted words.

This filing complies with the typeface requirements Federal Rule of Appellate Procedure 32 and Fifth Circuit Rule 32 because it uses a 14 point proportionally spaced typeface of Microsoft Word 201a.

/s/ *Chad Flores*
Chad Flores